UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN ZIMMERMANN and
JAMIE ZIMMERMANN,

    Plaintiffs,

v.

SCOTT LABISH, *et al.*,

    Defendants.

_____/

Case No. 2:22-cv-12338
District Judge Terrence G. Berg
Magistrate Judge Anthony P. Patti

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 10, 25, 26, 27, 36)</u>

**I.** **RECOMMENDATION**: The Court should **GRANT** Defendants' motions to dismiss.  (ECF Nos. 10, 25, 26, 27, 36.)  If the Court agrees, it should also decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, and dismiss the amended complaint in its entirety.  However, the Court should **DENY** Defendants' requests for an award of costs and attorney fees associated with these motions (ECF No. 25, PageID.533; ECF No. 26, PageID.597, 622; ECF No. 27, PageID.668, 693; ECF No. 36, PageID.1031, 1053), as the issues on which this recommendation is based merited review.

**II.** **REPORT**

  **A.** **Background**

## 1.    Factual Background

Plaintiffs Brian and Jamie Zimmermann filed the instant lawsuit *in pro per* on October 3, 2022, alleging that the actions and/or inactions of the following Defendants resulted in the death of their son JPZ by suicide following a disciplinary encounter at the Romeo Community School District (RCSD) Ninth Grade Academy on October 4, 2019: Macomb County Sheriff's Office (MCSO) Deputy and RCSD School Resource Officer (SRO) Scott Labish; Macomb County Sheriff Anthony Wickersham; former Macomb County Prosecutor Eric Smith; Macomb County Prosecutor Peter Lucido; RCSD Superintendent Todd R. Robinson; RCSD Ninth Grade Academy Principal Melissa Arendts; unidentified RCSD Board of Education staff Taylor Doe; RCSD Board Members Gus Demas, Chris Young, Jill Rilley,[1] Kim Barrows, Anita Banach, Mike Antoine, and Wayne Conner, II; and unidentified MCSO Deputies John and Jane Doe.  (ECF No. 1.) On October 21, 2022, Plaintiffs filed an amended complaint, which is now the operative pleading.  (ECF No. 5.)  Notably, Plaintiffs state throughout that they are bringing the lawsuit as "PARENTS of [JPZ], in their individual capacities."  (ECF No. 5, PageID.226-227, 360, 367, 374, 385, 389, 391, 396, 400, 405, 409, 412, 414.)

---

[1] Defendant Rilley's name is spelled as Riley on the docket, but Rilley in her motion to dismiss.  (*See* ECF No. 10, PageID.429-430.)  Accordingly, I will use the spelling Rilley throughout this report.

The tragic allegations made in this nearly 200-page, 798 paragraph amended complaint can be summarized, as follows.  On October 4, 2019, JPZ was involved in an incident with another student while getting off the school bus at the RCSD Ninth Grade Academy.  (ECF No. 5, PageID.252, ¶¶ 73-75.)  Following the incident, Principal Arendts contacted JPZ's mother, Plaintiff Jamie Zimmermann, to inform her that JPZ had been suspended and would need to be picked up from school.  (ECF No. 5, PageID.252, ¶¶ 76-77.)

When JPZ's grandmother arrived at the school to bring him home, she was told law enforcement had been notified of the incident and SRO Deputy Labish would be meeting with JPZ.  (ECF No. 5, PageID.254-255, ¶¶ 85, 95.)  According to Plaintiffs, with no regard for JPZ's developmental disability (ADHD), SRO Deputy Labish used aggressive tactics against JPZ as part of a "Scared Straight" policy utilized within the RCSD, including telling JPZ that he could face criminal charges, and did so in retaliation for JPZ recording a prior school bus incident in May 2019.  (ECF No. 5, PageID.256, 266, 286-288, 342, ¶¶ 100, 150, 244, 254, 501.)[2]  Further, neither plaintiff was notified that JPZ had or would be detained by law enforcement.  (ECF No. 5, PageID.262, ¶ 126.)

---

[2] On PageID.326 of the amended complaint, it becomes ECF No. 5-1.  But for efficiency purposes, the Undersigned will reference the entire document as ECF No. 5.

"[U]pon conclusion of the detention with Principal ARENDTS and Deputy LABISH, [JPZ] quickly fled the room and left the school building without a word to anyone[,] leaving his grandmother behind."  (ECF No. 5, PageID.259, ¶ 113.)  It was later discovered that JPZ had taken his own life.  (ECF No. 5, PageID.234.)

### 2.    Counts and claims

Focusing primarily on the twelve counts listed at the end of Plaintiffs' amended complaint, although somewhat difficult to follow, Plaintiffs raise several federal statutory and constitutional claims pursuant to 42 U.S.C. §§ 1983 and 1988, as well as state law claims, most alleging violations of JPZ's rights.  In Count I, which Plaintiffs label a violation of the Fourteenth Amendment pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs actually assert several constitutional claims, including: cruel and unusual punishment in violation of JPZ's Eighth Amendment rights; unlawful detention and arrest of JPZ, without first contacting Plaintiffs, in violation of JPZ's due process and equal protection rights; and retaliation in violation of JPZ's First Amendment rights for his action of recording school bus bullying in May 2019.  (ECF No. 5, PageID.341-360.)  Plaintiffs also appear to intermix claims of their own constitutional injuries.  Specifically, they state:

> Defendants all acted in depriving [JPZ] *and Plaintiffs* of their rights, privileges, and immunities secured to them by the United States Constitution including the right to be free of improper detention, unlawful punishments, the right to due process under the 14th Amendment of the Constitution of the United States, 42 U.S.C. §1983 and §1988, and the right to be free of Cruel and Unusual punishment,

4

under the 8th Amendment, and specifically **the right to be kept safe from physical and mental harm, while in their custody**, when a special relationship has been created, especially by means of deception by *taking away from [JPZ's] parents their right and ability* to protect him from an unlawful scheme and practice that was discriminatory against [JPZ] on account of his disability.

(ECF No. 5, PageID.353, ¶ 558) (italicized emphases added).

In Count II, Plaintiffs again assert Fourteenth Amendment claims, alleging that Defendants deprived JPZ of his due process and equal protection rights by enacting an unlawful disciplinary policy and failing to train/supervise, but also that "Defendants acted with deliberate indifference when they concealed from his parents the danger and harm [JPZ] was in at school, causing them serious emotional distress when his parents could not protect him." (ECF No. 5, PageID.363, ¶ 580.) In Count III, labeled 42 U.S.C. § 1983 *Monell* liability (RCSD), and intentional infliction of emotional distress (IIED) resulting in wrongful death, Plaintiffs also essentially claim that the student disciplinary policy caused the constitutional violations alleged. (ECF No. 5, PageID.368, ¶ 590.) And in Count IV, with a similar label but directed at the MCSO Defendants, Plaintiffs raise related claims, as well as a claim for "misprision of a felony" for the MCSO's alleged cover-up (or "Blue Wall of Silence") of misconduct and child abuse perpetrated by MSCO personnel against JPZ. (ECF No. 5, PageID.375-376, 380-381, ¶¶ 629, 652-654.)

5

Count V includes similar constitutional claims to those raised earlier both personal to Plaintiffs and on behalf of JPZ.  Plaintiffs assert that Defendants deprived JPZ of his Eighth Amendment rights while he was essentially in custody, and state, "Decedent [JPZ's] parent's right to protect him was inhibited, when the Defendants deceived and concealed from his parents the danger to which [JPZ] was to be exposed to in contact with Principal ARENDTS and Deputy LABISH at school."  (ECF No. 5, PageID.386, ¶ 674.)  In Count VI, Plaintiffs claim SRO Deputy Labish subjected JPZ to false arrest and imprisonment, as well as IIED upon JPZ and a violation of mandatory reporter laws.  (ECF No. 5, PageID.390-391, ¶¶ 687-694.)

Along with reiterating the claim of First Amendment retaliation described above, in Count VII, Plaintiffs assert a Fourth Amendment claim apparently against Superintendent Robinson, Sheriff Wickersham, and SRO Deputy Labish, alleging unlawful detention and search of JPZ's phone without probable cause. (ECF No. 5, PageID.392-296, ¶¶ 695-715.)   In Count VIII, citing 18 U.S.C. § 242 and the Fourteenth Amendment, Plaintiffs again assert a constitutional claim personal to them, stating, "Principal ARENDTS and Deputy LABISH denied Plaintiff Decedent and his parents BRIAN ZIMMERMANN and JAMIE ZIMMERMANN their custodial interest and their companion interest in being able to protect [JPZ] from harm and danger due to the Defendants Principal ARENDTS

6

and Deputy LABISH's deceptive scheme."  (ECF No. 5, PageID.397-398, ¶¶ 721, 722.)

In Counts IX and X, Plaintiffs assert violations of Section 504 of the Rehabilitation Act, the Americans with Disabilities Act (ADA), and the Individuals with Disabilities Education ACT (IDEA), essentially alleging that Defendants failed to properly consider JPZ's development disability.  (ECF No. 5, PageID.401-409, ¶¶ 737-775.)  In Count XI, Plaintiffs claim conspiracy to violate established constitutional rights, stating, in part, "Defendants Principal ARENDTS and Deputy LABISH combined and conspired together, in combination with other employees, representatives, and agents of the RCSD and MCSO to wrongfully subject Plaintiff *Decedent [JPZ]* to extreme disciplinary action."  (ECF No. 5, PageID.409, ¶ 777) (emphasis added).

Finally, Plaintiffs raise several state law claims in Count XII, "including, but not limited to, those identifiable in the Michigan Persons with a Disability Civil Rights Act, Michigan Wrongful Death Act, Michigan Child Protection Act, Michigan Internet Privacy Act, 'Matt Epling Safe School Act,' and the Mandatory Reporter Act, where permitted by law and where immunity is removed by law."  (ECF No. 5, PageID.413, ¶ 794.)  Additionally, they state, "[JPZ's] presumptive next of kin include his mother, his father, his brothers, and grandparents, which

have suffered loss of his support, services, society, and endure severe mental anguish from his death."  (ECF No. 5, PageID.414, ¶ 797.)

Plaintiffs request injunctive relief, including "a Temporary Restraining Order enjoining the Defendants from operating the RCSD disciplinary scheme wherein students are referred to Law Enforcement for violations of the Student Code of Conduct not constituting criminal misconduct," as well as punitive and compensatory damages, and damages for breach of contract related to the ADA and IDEA claims.  (ECF No. 5, PageID.415-418.)  While fully recognizing the serious and tragic circumstances which precipitated it, the amended complaint (ECF No. 5), as did its previous 194-page, 798-paragraph iteration (ECF No. 1), grossly offends the requirement at Fed. R. Civ. P. 8(a)(2) that a "pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  A defendant can hardly be expected to respond to such a tome, paragraph by paragraph.  Even absent the grounds for dismissal that follow, the pleadings would be subject to court-ordered correction of deficiencies or ultimately dismissal.  *See, e.g.*, *Kuehl v. FDIC*, 8 F.3d 905, 908-09 (1st Cir. 1993) (district court did not abuse its discretion in dismissing 43-page, 358 paragraph complaint).

### 3.   Instant Motions

8

Each of the named and identified Defendants have now filed motions to dismiss Plaintiffs' amended complaint.  On December 1, 2022, Defendants Superintendent Robinson, Principal Arendts, and RCSD Board Members Demas, Young, Rilley, Barrows, Banach, Antoine, and Conner, II (collectively the RCSD Defendants) filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the Court lacks subject matter jurisdiction because Plaintiffs do not have standing, as they assert claims in their individual capacities rather than as personal representatives of JPZ's estate.  Accordingly, they argue, Plaintiffs have engaged in the unauthorized practice of law.  (ECF No. 10, PageID.429-437.)

In their respective motions to dismiss, all filed pursuant to Fed. R. Civ. P. 12(b)(6), Defendants SRO Deputy Labish, Macomb County Prosecutor Lucido, Sheriff Wickersham, and former Macomb County Prosecutor Eric Smith similarly challenge Plaintiffs' capacity to sue, but also assert qualified immunity, state law immunity, and the absence of a duty to protect, amongst other arguments.  (ECF Nos. 25, 26, 27, 36.)

Two of the motions to dismiss are currently unopposed.  Plaintiffs filed a response to the RCSD Defendants' motion to dismiss (ECF No. 29), but the Court struck that response for failure to comply with E.D. Mich. Local Rule 7.1 (ECF No. 31), and Plaintiffs have not re-filed a conforming response.  The Court ordered Plaintiffs' response to former Macomb County Prosecutor Smith's February 9,

2023 motion to dismiss (ECF No. 36) by March 13, 2023 (ECF No. 37), but no response has been filed. "A respondent opposing a motion must file a response, including a brief and supporting documents then available." E.D. Mich. LR 7.1(c)(1). Nonetheless, at least to the extent that the motions are based on a failure to state a claim, the Sixth Circuit has held that a district court cannot grant a motion to dismiss for failure to state a claim on the sole ground that a plaintiff has failed to respond pursuant to a local rule. *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). Instead, district courts must, at a minimum, examine the motion to dismiss to ensure the movant has discharged its burden. *Id*.

Plaintiffs did file responses to the December 20, 2022 motions to dismiss filed by SRO Deputy Labish, Macomb County Prosecutor Lucido, and Sheriff Wickersham, albeit after the deadline imposed by the Court (*see* ECF No. 28), arguing, in part, that Plaintiff Brian Zimmermann has, in fact, been appointed personal representative of JPZ's estate, and that the amended complaint asserts claims personal to them – violations of their right to the parent-child relationship protected by the Fourteenth Amendment (ECF No. 32, PageID.769-770, 776, 83-784; ECF No. 33, PageID.807, 810-811, 817, 823, 825, 828; ECF No. 34, PageID.925-927, 938-938, 941-942). Specifically, they state, "Plaintiffs . . . acknowledge[] that [while] many of the stated and identified claims of the First Amended Complaint sound personal as to JPZ, Plaintiff is still seeking retention of

Counsel to present the claims which are truly personal to JPZ," but "[t]he facts alleged in the Plaintiffs' First Amended Complaint state clearly that Plaintiffs' parental rights under the constitution were intruded upon and infringed by the Defendant Deputy LABISH in taking JPZ into custody, that the parent-child relationship was severed by the act of child abuse and deceit committed by Defendant Deputy LABISH[.]"  (ECF No. 33, PageID.825, 829.)

## B.  Standards

### 1.  Fed. R. Civ. P. 12(b)(1)

"If Plaintiffs cannot establish constitutional standing, their claims must be dismissed for lack of subject matter jurisdiction." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007).  "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).  In reviewing a motion under Rule 12(b)(1), the "court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).  When faced with a challenge to subject matter jurisdiction, "a court must address that issue before all others." *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674, 681 (E.D. Mich. 2013) (collecting cases).

Motions under Rule 12(b)(1) fall into two categories: "facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges "the sufficiency of the pleading itself," and the "court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id*. A factual attack does not challenge the sufficiency of the allegations, but is a "challenge to the factual existence of subject matter jurisdiction." "[N]o presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear a case." *Id*. (internal citation omitted).

### 2.     Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Rule 12(b)(6), the courts must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual

12

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). To make this determination, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented, nor may courts construct the plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations.'" *Rogers v.*

*Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.) (internal citations omitted).[3]

## C. Discussion

For the reasons that follow, the Court should dismiss Plaintiffs' federal constitutional and statutory claims, as well as their wrongful death claim, and decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

### 1. Standing

#### a. Plaintiffs' claims for violations of JPZ's federal statutory and constitutional rights

Plaintiffs claim violations of JPZ's constitutional rights, as well as violations of JPZ's rights under the ADA, IDEA, and Section 504. (ECF No. 5, PageID.341-412.

"It is well established in this Circuit that 'a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort.'" *Foos v. City of Delaware*, 492 F. App'x 582, 592 (6th Cir. 2012) (quoting *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000); *see also Jaco v. Bloechle*, 739 F.2d 239, 241-42 (6th Cir. 1984). Thus, "only the purported victim, or his estate's

---

[3] *See also Evans v. Mercedes Benz Fin. Servs.*, LLC, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

representative(s), may prosecute a section 1983 claim[.]" *Claybrook*, 199 F.3d at 357.

Although Plaintiffs assert in their response briefs that Brian Zimmermann has been appointed personal representative of JPZ's estate (ECF No. 33, PageID.807; ECF No. 34, PageID.938), they neither attach, nor cite proof of, this appointment.  They make no such claim in their amended complaint, as would be typical in the first paragraph or two of a lawsuit asserting a wrongful death claim or claiming an injury to a decedent, *e.g.*, "Plaintiffs are the duly (or court appointed) personal representatives of the Estate of . . . ."  Indeed, it is not even apparent that a probate estate has been opened for JPZ.  *See* Mich. Ct. R. 5.302-310.  And more importantly, they explicitly state throughout their amended complaint that they are filing suit as parents of JPZ, in their *individual capacities*. (ECF No. 5, PageID.226-227, 360, 367, 374, 385, 389, 391, 396, 400, 405, 409, 412, 414.)  Accordingly, as currently pleaded, the Court should dismiss Plaintiffs' claims, asserted pursuant to 42 U.S.C. § 1983, that Defendants violated JPZ's

constitutional rights. [4]  (*See* Counts I-VIII, XI, ECF No. 5.)[5]

For similar reasons, the Court should dismiss the ADA, IDEA, and Section 504 claims raised in Plaintiffs' amended complaint.  (*See* Counts IX and X, ECF No. 5.)  District Courts within the Sixth Circuit have held that parents lack standing to assert personal claims on their own behalf for discrimination against their children under the ADA and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, *et seq*.  *Parker v. West Carroll Sch. Dist.*, No. 20-cv-1044, 2020 WL 8513828, at *3 (W.D. Tenn. Nov. 24, 2020), *report and recommendation adopted*, 2021 WL 71962 (W.D. Tenn. Jan. 8, 2021) (citing *Sorah v. Tipp City Exempted Vill. Sch. Dist. Bd. of Educ.*, No. 3:19-CV-120, 2020 WL 1242882, at *4 (S.D. Ohio Mar. 16, 2020); *Burton v. Cleveland Heights-Univ. Heights City Sch. Dist. Bd. of Educ.*, No. 17 CV 134, 2017 WL 4348915, at *3-4 (N.D. Ohio Sept. 29, 2017); *Link v. Metro. Gov't of Nashville & Davidson Cty.*, No. 12-cv-0472, 2012

---

[4] It also bears noting that the protections afforded by the Eighth Amendment's Cruel and Unusual Punishments Clause only apply to those in the custody of the state post-conviction.  *See Whitley v. Albers*, 475 U.S. 312, 318 (1986) (citing *Ingraham v. Wright*, 430 U.S. 651, 664, 671 n.40 (1977); *see also Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  Thus, it would not be applicable to Plaintiffs or JPZ.

[5] As provided above, Plaintiffs also cite 18 U.S.C. § 242 for their constitutional claims in Count VIII.  (ECF No. 5, PageID.396.)  However, 18 U.S.C. § 242 is a criminal statute which provides no private cause of action.  *Young v. Overly*, No. 17-6242, 2018 WL 5311408, at *2 (6th Cir. July 2, 2018) (citing *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003)).

16

WL 4506028, at *5 (M.D. Tenn. Sept. 28, 2012)).  Here, Plaintiffs bring suit in

their individual capacities, rather than as personal representatives of JPZ's estate,

but their claims allege violations of JPZ's rights under the ADA and Section 504.

(ECF No. PageID.401-409.)  Accordingly, the Court should dismiss these claims,

as pleaded, without prejudice.

Under the IDEA, parents have standing to bring claims on their own behalf.

*Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 526 (2007).

Plaintiffs do generally assert that the RCSD failed under the IDEA to evaluate JPZ

upon identification of his disability, and "provide services as to not discriminate

against him."  (ECF No. 5, PageID.403-404, ¶¶ 750-753.)  However, so far as I can

surmise, it appears that they do so in an effort to claim again that the RCSD's

actions and inactions harmed JPZ during his October 4, 2019 disciplinary

encounter, a claim personal to JPZ, and/or had and would harm *other students* with

disabilities.  (ECF No. 5, PageID.401-405, 417.)[6]  Accordingly, the Court should

---

[6] For example, Plaintiffs allege:

> The RCSD and the MSCO failed to establish a practical method of
> identifying children during disciplinary actions.  Their failure to
> develop[] and implement policies and practices to determine which
> children with disabilities are currently receiving or not receiving
> needed special education and related services during school discipline
> issues were ignored and such matters directly referred students with
> disabilities to Law Enforcement.

(ECF No. 5, PageID.404-405, ¶ 755.)

dismiss without prejudice the IDEA claims raised in Plaintiffs' amended complaint (Count IX).  (ECF No. 5, PageID.401-405.)

### b.    Plaintiffs' personal constitutional claims

In response to Defendants' standing and capacity arguments, Plaintiffs also highlight their claim that Defendants' actions and inactions violated their own liberty interest in the parent-child relationship with JPZ, as protected by the Fourteenth Amendment, and caused them significant mental anguish.  (ECF No. 32, PageID.769; ECF No. 33, PageID.807, 810-811, 817, 823, 825, 828; ECF No. 34, PageID.925-927, 941-942.)  In the amended complaint, for example, Plaintiffs allege that Defendants deprived them of their right to protect, and companionship with, JPZ.  (Counts I-II, VIII, ECF No. 5, PageID.353, 363, 397-398, ¶¶ 558, 580, 721-722.)  Although I am sympathetic to the awful circumstances alleged, the Court should dismiss these claims.

The Sixth Circuit has stated that "'no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members.'"  *Foos*, 492 F. App'x at 592-93 (quoting *Claybrook*, 199 F.3d at 357).  Thus, any claims for damages regarding emotional distress alleged pursuant to 42 U.S.C. § 1983 should be dismissed.

Further, in *Kellom v. Quinn*, No. 17-11084, 2018 WL 4111906, at *13-15 (E.D. Mich. Aug. 29, 2018) (Cox, J.), the Court examined the claim of non-estate plaintiffs that their constitutional right to familial association was violated by the shooting of their loved one.  First, the Court summarized the Sixth Circuit's opinion in *Kottmyer v. Maas*, 436 F.3d 684 (6th Cir. 2006), in which the plaintiffs of a deceased infant claimed infringement of their right to familial association, stating:

> In the context of the discussion, the Sixth Circuit noted that other courts "have recognized that the right to familial association is implicated by the killing of a child by a state agent."  *Kottmyer*, 436 F.3d at 690.  The Court further noted that those "decisions rely on the notion that parents have a constitutionally protected liberty interest in the companionship and society of their children, which they are permanently deprived of when their children are killed by a state actor."  *Id*.

*Kellom*, 2018 WL 4111906, at *13-14.  Ultimately, however, the Court determined that "the Sixth Circuit has not yet recognized a § 1983 claim for loss of the right to familial association when a child is killed by a state agent," citing Sixth Circuit and Eastern District of Michigan opinions noting that the above language *Kottmyer* is *dicta*, and declining to find such a right.  *Id*. at 13-15 (citing *Brooks v. Knapp*, 221 F. App'x 402, 407-08 (6th Cir. 2007); *Mitchell v. City of Warren*, 2012 WL 424899, at *6 (E.D. Mich. Feb. 9, 2012); *LeFever v. Ferguson*, 645 F. App'x 438, 448 (6th Cir. 2016)).  Moreover, here, state action is even more remote, as Plaintiffs allege that JPZ died by suicide, not that he was killed by a state actor.  If

19

there is no liability under this theory where a child is directly "killed by a state

actor[,]" liability in the alleged circumstances is even less sustainable.

Further, very recently, the Sixth Circuit in *Chambers v. Sanders*, 63 F.4th

1092, 1100 (6th Cir. 2023), adopted the standard that:

> actions that collaterally impact the family relationship are insufficient
> to give rise to a substantive due process claim that the state has
> violated an individual's right to family integrity.  The government
> official must have, at a minimum, acted with a culpable state of mind
> directed at the plaintiff's family relationship or a decision traditionally
> within the ambit of the family.  Thus, many state actions with
> collateral effects on families are not constitutional violations.

Here, Plaintiffs have not pleaded facts to state a claim that Defendants'

conduct towards JPZ, or Defendants' failure to inform Plaintiffs that JPZ would be

meeting with law enforcement, was directed specifically at interfering with their

parent-child relationship.  Accordingly, the Court should dismiss Plaintiffs' claims

for violation of their own rights to maintenance of the parent-child relationship

protected by the Fourteenth Amendment.

### c.    Plaintiffs' wrongful death claim

Plaintiffs also assert a wrongful death claim under Michigan law.  (ECF No.

5, PageID.413-415.)  For the reasons that follow, this claim, as pleaded, must fail.

In *Robertson v. Wegmann*, 436 U.S. 584, 587 (1978), the Supreme Court

stated that 42 U.S.C. § 1988:

> recognizes that in certain areas "federal law is unsuited or insufficient
> to furnish suitable remedies; federal law simply does not "cover every

issue that may arise in the context of a federal civil rights action."
*Moor v. County of Alameda*, 411 U.S. 693, 702, 703, 93 S.Ct. [1785]
1795, 1792, 36 L.Ed.2d 596 (1973), quoting 42 U.S.C. § 1988.  When
federal law is thus "deficient", § 1988 instructs us to turn to "the
common law, as modified and changed by the constitution and statues
of the (forum) State," as long as these are "not inconsistent with the
Constitution and laws of the United States."

*   *   *

[O]ne specific area not covered by federal law is that related to "the
survival of civil rights actions under § 1983 upon the death of either
the plaintiff or defendant."

*Jaco*, 739 F.2d at 241 (quoting *Robertson*, 436 U.S. at 587, 589) (quotations

omitted).

The Sixth Circuit has held that "Michigan's wrongful death act is consistent

with the compensatory purpose of section 1983 identified by the Supreme Court."

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 601 (6th Cir. 2006).  The Michigan

Wrongful Death Act provides, in relevant part:

(1) Whenever the death of a person, injuries resulting in death, or
    death as described in section 2922a shall be caused by wrongful
    act, neglect, or fault of another, and the act, neglect, or fault is
    such as would, if death had not ensued, have entitled the party
    injured to maintain an action and recover damages, the person who
    or the corporation that would have been liable, if death had not
    ensued, shall be liable to an action for damages, notwithstanding
    the death of the person injured or death as described in section
    2922a, and although the death was caused under circumstances
    that constitute a felony.

(2) Every action under this section shall be brought by, and in the
    name of, *the personal representative of the estate* of the deceased.

21

Mich. Comp. Laws § 600.2922 (emphasis added).

Again, although Plaintiffs assert in their response briefs that Brian Zimmermann has been appointed personal representative of JPZ's estate (ECF No. 33, PageID.807; ECF No. 34, PageID.938), they neither attach, nor cite proof of, this appointment. And more importantly, they explicitly state throughout their amended complaint that they are filing suit as parents of JPZ, in their *individual capacities*. (ECF No. 5, PageID.226-227, 360, 367, 374, 385, 389, 391, 396, 400, 405, 409, 412, 414.) Accordingly, as currently pleaded, the Court should dismiss Plaintiffs' wrongful death claim. (*See* Count XII, ECF No. 5, PageID.413-415.)

### 2.    Misprision of a felony

Additionally, labeled as misprision of a felony, Plaintiffs appear to claim that Defendants covered-up the circumstances surrounding JPZ's death. (ECF No. 5, PageID.380-381.) Misprision of a felony is defined as "Concealment or non-disclosure of someone else's felony." *Black's Law Dictionary* (9th ed.). It is a felony under federal law. 18 U.S.C. § 4 ("Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both."). This statute provides no private cause of action, and I am otherwise unaware of any private cause of

22

action for misprision of a felony.  *See Powell v. Galveston Ind. Sch. Dist.*, No. G-06-415, 2006 WL 2239097, at *4 (S.D. Tx. Aug. 1, 2006) (citing *Panley v. Webster*, 816 F. Supp. 553, 559 (W.D. Mo. 1993) and *U.S. ex rel. Farmer v. Kaufman*, 750 F. Supp. 106, 108 (S.D.N.Y. 1990)).

### 3.    Plaintiffs' additional state law claims

Should the Court agree with the above analysis, the only claims remaining would be the additional state law claims raised in Count XII of their amended complaint (ECF No. 5, PageID.413-415), over which the Court should decline to exercise supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a) and (c); *Grace v. USCAR*, 521 F.3d 655, 679-80 (6th Cir. 2008).  Further, the Court need not address Defendants' additional arguments for dismissal, including qualified immunity and duty.

### 4.    Request for costs

In their motions to dismiss, Defendants the non-RCSD Defendant request costs and fees for those motions, generally citing only the "necessity of preparing, filing, and appearing to argue this matter."  (ECF No. 25, PageID.533; ECF No. 26, PageID.597, 622; ECF No. 27, PageID.668, 693; ECF No. 36, PageID.1031, 1053.)  The Court should **DENY** these requests, as the issues on which this report and recommendation are based merited review and no statutory or rules-based basis for fees is cited or supported.

23

### D.    Conclusion

The Court should **GRANT** Defendants' motions to dismiss.  (ECF Nos. 10,

25, 26, 27, 36.)  If the Court agrees, it should also decline to exercise supplemental

jurisdiction over Plaintiffs' remaining state law claims, and dismiss the amended

complaint in its entirety.  Further, the Court should **DENY** Defendants' requests

for costs and fees associated with filing the instant motions.  (ECF No. 25,

PageID.533; ECF No. 26, PageID.597, 622; ECF No. 27, PageID.668, 693; ECF

No. 36, PageID.1031, 1053.)

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &

Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &

Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: May 12, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE