UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **BRIAN ZIMMERMAN,**<br><br>Plaintiff,<br><br>vs.<br><br>**SCOTT LABISH et al.,**<br><br>Defendants. | **2-22-CV-12338-TGB-APP**<br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>**(ECF NOS. 64; 71; 74);**<br><br>**AND DENYING DEFENDANTS' MOTIONS FOR STAYS AND FOR PROTECTIVE ORDERS**<br><br>**(ECF NOS. 68; 76; 79; 92; 93)** |

This matter is before the Court on three Motions to Dismiss Brian Zimmerman's ("Plaintiff's") Second Amended Complaint ("the Complaint"), ECF No. 61, against Scott Labish, Melissa Arendts, the Macomb County Sheriff's Department, and the Romeo Community School District (jointly, "Defendants"). For the following reasons, the Motions to Dismiss will be **GRANTED** in part and **DENIED** in part, and this case will proceed to discovery.

# I. BACKGROUND

Plaintiff's Complaint makes claims related to the following alleged events:

> On October 4, 2019, JPZ [Plaintiff's child] was involved in a fight with another student while getting off the school bus at the Romeo Community School District Ninth Grade Academy. ECF No. 5, PageID.252. Following the incident, Principal Melissa Arendts contacted JPZ's mother, Plaintiff Jamie Zimmermann, to inform her that JPZ had been suspended and would need to be picked up from school. ECF No. 5, PageID.252.
>
> When JPZ's grandmother arrived at the school to bring him home, she was told law enforcement had been notified of the incident and SRO Deputy Scott Labish would be meeting with JPZ. ECF No. 5, PageID.254-55. According to Plaintiffs, with no regard for JPZ's developmental disability (ADHD), SRO Deputy Labish used aggressive tactics against JPZ as part of a "Scared Straight" policy utilized within the RCSD that included telling JPZ that he could face criminal charges. Plaintiffs allege that Labish treated JPZ in this manner in retaliation for JPZ having recorded a prior school bus incident in May 2019. ECF No. 5, PageID.256, 266, 286-88, 342. Plaintiffs further point out that neither parent was notified that JPZ had been or would be detained by law enforcement. ECF No. 5, PageID.262.
>
> [U]pon conclusion of the detention with Principal ARENDTS and Deputy LABISH, [JPZ] quickly fled the room and left the school building without a word to anyone[,] leaving his grandmother behind." ECF No. 5, PageID.259. It was later

> discovered that JPZ had taken his own life. ECF
> No. 5, PageID.234.

ECF No. 47, PageID.1601-02.

Plaintiff initially proceeded *pro se*, filing this lawsuit on October 3, 2022. ECF No. 60, PageID.1695. The Court previously dismissed Plaintiff's then-operative complaint without prejudice because of a lack of standing. *Id.* at PageID.1693-94. Plaintiff then secured counsel, and filed a Motion to File a Second Amended Complaint. ECF No. 50. The Court granted that Motion in part, ECF No. 60 (the "Order Granting in Part and Denying in Part Plaintiff's Motion for Leave to File a Second Amended Complaint," or "the Court's previous Order") and Plaintiff filed the now-operative Complaint, ECF No. 61.

When Plaintiff filed their Motion to File a Second Amended Complaint, the Defendants (excluding the Macomb County Sheriff's Department) filed a Response. ECF No. 52. That Response argued that Plaintiff should not be permitted to file an amended complaint, because such a complaint would be futile: it could not survive a motion to dismiss. *Id.* at PageID.1645. After reviewing Defendants' arguments, the Court held that Plaintiff's Second Amended Complaint *could* survive a motion to dismiss, and was therefore not futile. Plaintiff had included sufficient facts to state plausible claims, and dismissal based on qualified immunity was inappropriate without further discovery. ECF No. 60, PageID.1707-08.

The Court issued its previous Order on August 22, 2024, and Plaintiff filed the now-operative Complaint on September 5, 2024. However, rather than engage in discovery, the Defendants filed Motions to Dismiss Plaintiff's Complaint. ECF Nos. 64; 71; 74. These Motions seek a determination from the Court that contrary to the Court's findings in the previous Order, Plaintiff's Complaint *cannot* survive a Motion to Dismiss. Plaintiff responded to these Motions, ECF Nos. 77; 80; 83, and the Defendants filed Replies. ECF Nos. 84; 85; 86.

While those Motions have been pending, Defendants have also filed a Motion for Leave to File Excess Pages, and several Motions to Stay and Motions for Protective Orders, seeking this Court to halt discovery while Defendants' qualified immunity arguments in their Motions to Dismiss are pending. ECF Nos. 68; 76; 79; 92; 93. Plaintiff responded to some of these Motions. ECF Nos. 82; 87; 94; 96.

## II. DISCUSSION

### A.   Macomb County Sheriff's Motion to Dismiss

The Macomb County Sheriff's Department ("the MCSD") filed a Motion to Dismiss Plaintiff's Complaint on September 18, 2024. ECF No. 64. That Motion will be **GRANTED** in part and **DENIED** in part.

### i.   Wrongful Death

The Complaint alleged that the MCSD was liable for the wrongful death of JPZ, presumably under state wrongful death law. *See* ECF No. 61, PageID.1732 (Count V). The MCSD argues that as a governmental

4

agency, they are immune from claims arising under state tort law. ECF No. 64, PageID.1762-63 (*citing Ross v. Consumers Power Co.*, 420 Mich. 567, 623-25 (1984) for the principle that a Michigan governmental agency is immune from tort liability for the acts of their employees within the course of employment unless the activity is nongovernmental or proprietary, or falls within a statutory exception). The MCSD argues that their employees' acts were not nongovernmental or proprietary, and that no statutory exception applies. ECF No. 64, PageID.1672-73. Plaintiff concedes this point: "As to Plaintiff's state tort claims, he agrees that he cannot maintain those claims against Defendant MCSD." ECF No. 80, PageID.2144. Therefore, the MCSD's Motion to Dismiss is **GRANTED** as to Count V of the Complaint.

## ii.   Substitution of Defendant

The MCSD also moves to dismiss the Complaint because they are not a proper party. ECF No. 64, PageID.1761. The MCSD are correct that they are not a proper party. *See Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007) (*citing Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich. 1997), for the principle that "a city police department is merely an agency of the city, and therefore is not a proper defendant in a § 1983 lawsuit."). Plaintiff acknowledges this. *See* ECF No. 80, PageID.2146.

Plaintiff argues that instead of dismissing the Complaint, the Court should construe the Complaint as being filed against the proper

5

defendant, Macomb County. *Id*. The Court finds support for this proposition. Courts in this District and Circuit will construe lawsuits incorrectly filed against non-legal entities as being filed against the proper municipal entity. *See Pegross v. Wayne Cnty. Jail*, No. 07-12839, 2008 WL 6722771, at *3 (E.D. Mich. May 22, 2008) (Lawson, J.). While this remedy is normally applied for *pro se* plaintiffs, this case proceeded *pro se* for years prior to Plaintiff retaining counsel. Plaintiff has requested the Court apply the *pro se* construction rule in this instance. *See* ECF No. 80, PageID.2147 n. 2.

The Court sees fit to do so. Fed. R. Civ. P. 21 allows the Court to add a party to a lawsuit at any time, on just terms. And Fed. R. Civ. P. 15(c)(1) allows claims against new parties arising from the same conduct to relate back for statute of limitations purposes if within the original time for service, the new party received such notice that it would not be prejudiced in defending the action, and knew or should have known that the action would have brought against it, but for a mistake concerning the proper party's identity.

Construing the Complaint as being against Macomb County is just. The facts of Plaintiff's Complaint obviously relate to Macomb County municipal government, through the actions of the MCSD. Macomb County received notice of this action such that it will not be prejudiced: the Macomb County Corporation Counsel's Office is already defending the MCSD. And Macomb County should have known that the action

6

should have been brought against it, but for a mistake concerning the proper party's identity: the caselaw on police departments being improper defendants is well-established.

The MCSD states that construing the Complaint in this way would be "procedurally improper," but does not cite authority for the proposition that the Court cannot take this approach. *See* ECF No. 86, PageID.2206.

Therefore, the Court will construe the Complaint as being filed against Macomb County, and will order the caption amended accordingly. *See Pegross*, 2008 WL 6722771, at *4.

### iii.   "Respondeat Superior"

The MCSD argues that the Complaint should be dismissed because it improperly relies on respondeat superior. ECF No. 64, PageID.1762 (*citing Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). But Plaintiff correctly responds that their claim does not rest on respondeat superior, but on a "*Monell* claim" that the MCSD maintains a custom, policy, and practice which allowed SROs like Labish to harass children. *See* ECF No. 80, PageID.2145-46; *Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."). Count II of the Complaint alleges that "[u]pon information and belief, the MCSD employs a custom, policy and practice of allowing SROs to deprive minor children of their constitutional rights

7

through involvement in aggressive discipline, seclusion, and/or restraints." ECF No. 61, PageID.1726. The Complaint further alleges that as a result of these practices, JPZ died. *Id.* at PageID.1727.

This is a proper *Monell* claim, not a claim based on respondeat superior. The MCSD attempts to argue that because the Complaint states that the MCSD "is responsible for training Deputy Labish as a SRO," that this is a respondeat superior claim. ECF No. 86, PageID.2207. But "[t]he courts recognize a systematic failure to train police officers adequately as custom or policy which can lead to city liability." *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (*citing City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Consequently, the MCSD's characterization of Plaintiff's claim as raising an improper respondeat superior claim must fail.

### iv.   Failure to State a Claim

In the MCSD's Reply, they argue that Plaintiff's allegations about the existence of an unlawful custom, policy, or practice are too conclusory to survive a motion to dismiss. ECF No. 86, PageID.2207-08. But as the Court held in its Order Granting in Part Plaintiff's Motion for Leave to File a Second Amended Complaint:

> Plaintiff has not failed to state a claim. Though *Monell* claims are generally difficult to succeed on, especially when proving a negative (e.g., policy of inadequate training, custom of acquiescing to violation of rights), discovery is necessary to make a record regarding these issues.

8

ECF No. 60, PageID.1708-09.

The same is true here. Accepting all of Plaintiff's allegations as true, Plaintiff has pled factual content allowing the Court to draw the reasonable inference that the MCSD is responsible for the alleged conduct. *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plaintiff has pled that the MCSD had a policy of allowing SROs to harass students, which caused the alleged constitutional harm in question, making them responsible for JPZ's death. *See Monell*, 436 U.S. at 694. This is sufficient to survive the plaintiff-friendly motion to dismiss standard.

The MCSD also argues that the Sixth Circuit has never found liability for a substantive due process claim where a student has committed suicide out of custody. ECF No. 86, PageID.2208. The MCSD does not explain why this should justify the dismissal of Plaintiff's claims against them at this stage. If the Court finds that Plaintiff has sufficiently pled that Labish violated JPZ's constitutional rights, the MCSD could be liable under *Monell* even if Labish has qualified immunity. "Under the law of this circuit, a municipality may not escape liability for a § 1983 violation merely because the officer who committed the violation is entitled to qualified immunity." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 365 (6th Cir. 1993)

Therefore, except as it relates to Count V, the MCSD's Motion to Dismiss is **DENIED**.

**B.    Arendts' and Romeo Community Schools' Motion to Dismiss**

For the reasons that follow, Melissa Arendts' and Romeo Community Schools' ("RCSD") Motion to Dismiss, ECF No. 71, will be **GRANTED** in part and **DENIED** in part.

**i.    This is a Motion for Reconsideration**

In large part, this Motion to Dismiss sets forth the same arguments that Arendts and RCSD made in their Response to Plaintiff's Motion for Leave to File a Second Amended Complaint. *See* ECF No. 52. That Response argued that Plaintiff should not be able to file a second amended Complaint, because the Defendants would be entitled to dismiss that Complaint under Rule 12. *Id.* at PageID.1645-46. That Rule 12 standard also applies here. In the Court's Order Granting Plaintiff Leave to File a Second Amended Complaint, the Court ruled on many of the arguments that Arendts and RCSD make here. *See* ECF No. 60, PageID.1707 (finding that qualified immunity would not justify pre-discovery dismissal of Plaintiff's complaint). To the extent that Arendt and RCSD make arguments in their Motion to Dismiss that the Court already ruled upon in its Order at ECF No. 60, the Court considers those arguments to be requests for the Court to reconsider its Order. *See Wrench LLC v. Taco Bell Corp.*, 36 F. Supp. 2d 787, 788 (W.D. Mich. 1998) ("In its motion to dismiss, Taco Bell raises the same arguments it raised in its previous motion to dismiss. . . . In the instant motion Taco Bell takes issue with the Court's prior rulings. Therefore, the motion is

10

properly characterized as a motion for reconsideration to the extent that it reasserts legal arguments already raised and decided."); *Nuckols v. Cleland*, No. 07-13200, 2008 WL 253039, at \*1 (E.D. Mich. Jan. 30, 2008) (Hood, J.) ("The Court construes Plaintiff's Second Motion to Disqualify as one for reconsideration, because it raises the same arguments set forth in Plaintiff's first Motion to Disqualify.").

Local Rule 7.1(h)(2)(A) of the Eastern District of Michigan provides the relevant standard. In this situation, the only ground on which a motion for reconsideration would be granted would be that "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision."

### ii. Reconsideration is Inappropriate on Arendts' Qualified Immunity

In their Response to Plaintiff's Motion for Leave to File a Second Amended Complaint, Arendts and RCSD argued that Plaintiff's Second Amended Complaint would inevitably be dismissed because Arendts would have qualified immunity against Plaintiff's § 1983 claim. ECF No. 52, PageID.1648-56. The Court disagreed. It held that Plaintiff's Second Amended Complaint sufficiently stated a § 1983 claim to survive a motion to dismiss: factual issues precluded dismissal. ECF No. 60, PageID.1707-08.

11

Now, Arendts and RCSD argue again in their Motion to Dismiss that Arendts' qualified immunity requires the Court to dismiss Plaintiff's Complaint. ECF No. 71, PageID.1965-66. For the reasons stated, the Court construes this argument as moving for the Court to reconsider its prior order. *See Wrench LLC*, 36 F. Supp. 2d at 788; *Nuckols*, 2008 WL 253039, at *1. The Court has reexamined the law and determines that it did not make an error of fact or law that would change the result of this argument: factual issues still preclude dismissal.

### a.    The Qualified Immunity Defense

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Wilson v. Gregory*, 3 F.4th 844, 855 (6th Cir. 2021) (*internal quotations removed, quoting Ouza v. City of Dearborn Heights*, 969 F.3d 265, 275 (6th Cir. 2020)). Arendts is a state official who asserts the qualified immunity defense to Plaintiff's § 1983 claim. ECF No. 71, PageID.1965. She argues that Plaintiff has not pled facts sufficient to satisfy either prong of the qualified immunity test. *Id.* at PageID.1965-80.

### b.    Violation of a Constitutional Right

The Court turns to the first prong of the qualified immunity test: whether Plaintiff has alleged that Arendts violated JPZ's constitutional rights. The parties agree that Plaintiff's theory of the alleged

constitutional violation is a "state created danger claim." ECF No. 71, PageID.1967; ECF No. 77, PageID.2113. Under that theory, Arendts is alleged to have created danger to JPZ that resulted in his suicide. ECF No. 77, PageID.2115-16.

State created danger claims have multiple required elements, too. They require the plaintiff to show:

> (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff."

*Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006) (*quoting Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)). The plaintiff must also show that the state actor's response to the plaintiff's risk of harm was "conscience shocking." *Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 934 (6th Cir. 2020) ("*Jackson*"). And the state actor must "know of the *specific* risk that later develops," not just a *general* risk of harm. *Id.* at 933-34.

Arendts argues that Plaintiff has not pled the required elements sufficiently to survive her Motion to Dismiss.

Arendts argues that Plaintiff only alleged that Arendts *failed* to intervene, rather than took an affirmative act which created danger. ECF

13

No. 71, PageID.1969-70. "Plaintiff [only] alleges that Defendant *failed* to report that Joseph may speak to the School Resource Officer, *failed* to intervene when Defendant Labish spoke with Joseph, and *failed* to recognize a student with a developmental disability." *Id.* (emphasis in original). But at the Motion to Dismiss stage, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (*quoting Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Here, Plaintiff alleges that Labish secluded and threatened JPZ, that Arendts was present for those threats, and that Arendts' and Labish's "actions were intentional and were taken for the purpose of causing . . . trauma to [JPZ]." ECF No. 61, PageID.1720-21, PageID.1724. The Court draws the reasonable inference that Arendts' presence and acquiescence during Labish's secluding and threatening JPZ shows that she participated in and directed that activity. *See also* ECF No. 71, PageID.1974 (Arendts' Motion to Dismiss, stating that "Plaintiff only alleges Defendant Arendts took the affirmative act of 'secluding' Joseph."). That would be an affirmative act which goes beyond a mere failure to intervene.

Arendts argues that her actions did not create or increase the risk that the plaintiff would be exposed to an act of violence. ECF No. 71, PageID.1972; *see also Jones*, 438 F.3d at 690, She argues that "the risk

14

of the type of harm that occurred already existed before state action," and "Plaintiff has not alleged that Defendant Arendts took *any* action that changed the course and trajectory of Joseph's behavior, such that it greatly increased the risk of suicide." ECF No. 71, PageID.1974. But Plaintiff responds that "there was no pre-existing danger to Joey prior to Defendants' involvement. Joey faced no danger or suicidal thoughts. It was the actions of all Defendants that created the situation in which he was subjected to dangerous and deceptive punishment tactics, thereby putting him at an increased risk of suicide." ECF No. 77, PageID.2119. The Court draws all reasonable inferences in favor of the Plaintiff, and finds that the Complaint sufficiently alleges that Arendts' actions *caused* JPZ to be subject to psychological trauma and risk of suicide. ECF No. 61, PageID.1724, *see Bassett*, 528 F.3d at 430. Arendts has not shown a reason for the Court to find that this danger of suicide existed *before* JPZ's seclusion.

Arendts then argues that Plaintiff has not sufficiently alleged that Arendts drew the inference that Plaintiff was at specific risk of the harm suffered: his suicide. ECF No. 71, PageID.1975-77; *see Jackson*, 954 F.3d at 933-34. "Plaintiff has not made any factual allegations establishing that any Defendants knew that Joseph intended to commit suicide that day. As a result, Plaintiff cannot meet this element of a state-created danger claim." ECF No. 71, PageID.1977. But Plaintiff responds that Arendts would have been aware that a 14-year-old child with a

15

developmental disability (which diagnosis Arendts would have been aware of because it originated at the school) would be at a specific risk of committing suicide after being subjected to seclusion and threats. ECF No. 77, PageID.2120-22.

The Court finds that at the Motion to Dismiss stage, the Court may draw the reasonable inference that if, as alleged, a school principal encouraged a police officer to threaten a 14-year-old student with a developmental disability, that the principal would have known that this action would lead to a specific risk of suicide for that student. *See Bassett*, 528 F.3d at 430. The alleged conduct against the alleged victim would have put the state actor on notice of that specific risk – after all, the alleged conduct seems designed to terrorize the student and subject him to great distress. Suicide would be a logical risk for the state actor to foresee in that situation. Plaintiff could prove that Arendts was aware of the specific risk of harm to JPZ, and that she drew the inference that the specific type of harm to JPZ would occur.

Finally, Arendts argues that even if she were aware of the specific risk of harm that JPZ would commit suicide, that her conduct was not "conscience shocking." ECF No. 71, PageID.1978-79. She argues that her conduct was not "so inspired by malice or sadism . . . that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Id.* (*citing Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996)). This is a factual issue. Plaintiff alleges that Arendts

should have known that the threats to JPZ would have serious potential to cause self-harm, and that these actions were intentional and taken for the purpose of causing psychological trauma. ECF No. 61, PageID.1724. At the Motion to Dismiss stage, the Court must take these allegations as true. *See Bassett*, 528 F.3d at 430. Like the Court held in its previous order, discovery is necessary to resolve this issue. *See* ECF No. 60, PageID.1708.

For the reasons stated, Arendts has not shown that the Court made an error of fact or law that would result in the Court finding that Plaintiff has not stated a claim for a violation of the Constitution. That argument therefore does not support dismissal on grounds of qualified immunity.

### c.   Whether the Constitutional Right was Clearly Established

As the Court noted above, to survive the qualified immunity defense, Plaintiff must not only adequately plead that Arendts violated JPZ's constitutional rights, but also that the constitutional right in question was clearly established. *Wilson*, 3 F.4th at 855. Arendts argues that there was no clearly established law that her alleged conduct violated the Constitution.

Arendts and Plaintiff disagree on how the Court should define the right that needs to be clearly established. Arendts argues that the right at issue is whether the state created danger standard applies to instances of suicide by someone not in official custody. ECF No. 71, PageID.1980

(*citing Wilson*, 3 F.4th at 859). Plaintiff responds that the right at issue is JPZ's clearly established right to "personal safety and bodily integrity." ECF No. 77, PageID.2122.

The Court agrees with Arendts, in part. Plaintiff's preferred definition of the clearly established right at issue is too broad. The Sixth Circuit and Supreme Court caution against definitions of clearly established law that operate "at a high level of generality," because the "crucial question [is] whether the official acted reasonably in the particular circumstances that he or she faced." *Wilson*, 3 F.4th at 856 (*quoting Plumhoff v. Rickard*, 572 U.S. 765, 779 (2012)). In *Wilson*, a state created danger suicide case, the Sixth Circuit rejected the plaintiffs' proposed 'clearly established right' against acts which "created or increased the risk" to the harmed person. *Wilson*, 3 F.4th at 856. Rather, it chose the more specific right at issue: whether the law "clearly established that it was unconstitutional to take affirmative actions that created or increased the risk of a person's suicide when the person was not in official custody?" *Id.*

Here, Plaintiff's proposed clearly established right to "bodily integrity," ECF No. 77, PageID.2122, is much broader than the more carefully framed constitutional right articulated in *Wilson*, 3.4th at 856, which the Court quoted above. That standard more accurately reflects the situation that Arendts faced, as alleged: did JPZ have a clearly established constitutional right not to be subjected to affirmative actions

18

by a state official that created or increased the risk that he would commit suicide when not in official custody?

Arendts argues that *Wilson* requires the same result : a finding that the right in question was *not* clearly established, and therefore that qualified immunity bars Plaintiff's suit against Arendts. ECF No. 71, PageID.1980 (*citing Wilson*, 3 F.4th at 859 ("[W]e have not yet extended the state-created-danger exception to . . . instances of suicide by someone not in official custody.")).

This is a close question. However, the Court concludes that it is too early in the case to determine whether Arendts' actions violated a clearly established right. First, as Plaintiff argues, ECF No. 77, PageID.2112-13, a defendant's entitlement to qualified immunity is more commonly resolved at the summary judgment stage, not dismissal under Rule 12. *See Moderwell v. Cuyahoga Cnty., Ohio,* 997 F.3d 653, 660-61 (6th Cir. 2021). This is because "[a]bsent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is 'obvious' or 'squarely governed by' precedent, which prevents us from determining whether the facts of this case parallel a prior decision or not for purposes of determining whether a right is clearly established." *Moderwell*, 997 F.3d at 660-61 (*internal quotations removed, quoting Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019)). Here, there has been no factual development beyond the allegations in the Complaint. This makes it difficult for the Court to determine whether the particular

19

circumstances support a finding that a clearly established right was violated.

Arendts would argue that no discovery is needed to determine whether the right at issue was clearly established. After all, the Sixth Circuit determined that it has "not yet extended the state-created-danger exception to . . . instances of suicide by someone not in official custody." *Wilson*, 3 F.4th at 859. Plaintiff would rely on the argument that "a right can be clearly established even if there is no case involving fundamentally similar or 'materially similar facts if the premise of a prior case alerts officials to the clear applicability of the legal principle to a subsequent set of facts." *Scicluna v. Wells*, 345 F.3d 441, 446 (6th Cir. 2003) (*quoting Feathers v. Aey*, 319 F.3d 843, 850 (6th Cir. 2003) (*itself quoting Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Here, the Court finds that *Jahn v. Farnsworth*, 617 Fed. App'x 453, 463-64 (6th Cir. 2015) (and the Sixth Circuit's reliance on *Jahn* in *Wilson*), creates a narrow pathway by which Plaintiff, after discovery, could make a colorable argument against qualified immunity. Specifically, the Sixth Circuit panel in *Jahn* distinguished its state created suicide facts from *Armijo v. Wagon Mound Pub. Sch*, 159 F.3d 1253, 1264 (10th Cir. 1998), where the Tenth Circuit found that officials could potentially be held responsible for state created danger suicides. In *Jahn*, "the school officials . . . took appropriate action . . . . [t]his is entirely different from *Armijo*, in which school officials dropped off the student

20

who was mentally unstable at his home without his parents being home to supervise him." *Jahn*, 617 Fed. App'x at 464. This difference led the *Jahn* panel to find that the school officials had not violated the appellant's rights under the state created danger doctrine. *Id.* The panel also noted that other courts had found *Armijo* factually distinguishable, because the school officials from *Armijo* arguably created the danger for the students involved in a way not present in the other cases. *Jahn*, 617 Fed. App'x at 463-64.

    *Jahn* would arguably alert school officials that if they engage in truly shocking behavior which causes a student to commit suicide, they could be found to have violated that student's constitutional rights under the state created danger doctrine. The fact that the Sixth Circuit panel distinguished *Armijo* as involving facts where the school officials "took appropriate action" and were not responsible for the suicide suggests that in the opposite situation, if the school officials had *not* taken appropriate action, the panel would have found that the officials could be liable. The logic the panel used to distinguish *Armijo* would inform officials of the clear applicability of that legal principle to a subsequent set of facts. *See Scicluna*, 345 F.3d at 446.

    But, as stated, this line of argument offers only a *narrow* way forward. The Sixth Circuit already found that cases like *Jahn* did not demonstrate a clearly established right against affirmative acts which increased the risk of suicide for someone out of custody. *Wilson*, 3 F.4th

21

at 856-59. Thus, to survive a qualified immunity defense at the summary judgment stage, the facts demonstrated by discovery would have to be so extreme that this Court could find that the *Wilson* decision—which relied on *Jahn*—does not preclude a finding of a clearly established right.

The facts would have to be so extreme that an official acting in 2019 would recognize, even in the absence of caselaw directly on point, that their actions so greatly increased the risk of a student's suicide that they were clearly unconstitutional based on the *Jahn* ruling. This will be Plaintiff's burden at the summary judgment stage. But at the Motion to Dismiss stage, the court still holds that there is a path forward: there could be a clearly established right against a state created risk of suicide *if* the facts are egregious enough and go well beyond those in *Jahn* and *Wilson*. Because this is a Motion to Dismiss, the Court accepts Plaintiff's allegations as true. *See Bassett*, 528 F.3d at 430. And Plaintiff has alleged that the facts in this case were so severe as to violate JPZ's clearly established rights. *See* ECF No. 61, PageID.1723. Whether Plaintiff can adduce facts capable of overcoming qualified immunity will need to be determined. The Court previously held that this issue required discovery, and that holding remains the same. *See* ECF No. 60, PageID.1707-08.

As such, the Court finds that Arendts has not met her burden to dismiss Plaintiff's complaint on qualified immunity grounds. Plaintiff had sufficiently pled that Arendts (1) violated a statutory or constitutional right, and (2) that the right was clearly established at the

time of the challenged conduct. Arendts has not shown that the Court made an error of fact or law that would change the outcome of the Court's Order Granting Plaintiff Leave to File a Second Amended Complaint.

### iii.   Reconsideration is Inappropriate on Whether Plaintiff Stated a Claim for Civil Conspiracy

In Defendants' Response to Plaintiffs' Motion for Leave to File a Second Amended Complaint, Arendts argued that it would be futile for Plaintiff to file an Amended Complaint alleging that Arendts was in a civil conspiracy. ECF No. 52, PageID.1656-59.

Arendts argued that Plaintiff could not survive a motion to dismiss such a claim, for two reasons: first, Plaintiff had not established a violation of constitutional rights under § 1983. ECF No. 52, PageID.1656-57. Second, Plaintiff had failed to allege sufficient facts to support a claim of conspiracy: Arendts argued that Plaintiff did not allege evidence of a specific, single, plan, nor a general conspiratorial objective, nor an overt act. *Id.* at PageID.1658-59.

The Court disagreed. It held that the proposed Second Amended Complaint detailed the following facts:

> [T]he single plan was to unlawfully seclude JPZ without a justified emergency, not inform his parents, and subject him to severe punishment, humiliation, and manipulation to deter future school code violations. Arendts caused JPZ to be in the room alone, Labish came in to intimidate him, and Arendts did not speak up to correct Labish's misleading statements nor inform his parents of this custodial incident. Taking the allegations as

23

> true, the amended complaint adequately alleges
> that Arendts and Labish acted together (neither
> took wholly independent actions) to discipline JPZ
> and affirmatively spoke to him.

ECF No. 60, PageID.1710.

The Court granted Plaintiff leave to file a complaint alleging that Arendts was involved in a civil conspiracy against JPZ. *Id.* at PageID.1713. Now, Arendts returns to the issue of whether the Second Amended Complaint adequately states a claim of civil conspiracy. And Arendts makes largely the same arguments: that Plaintiff did not state sufficient facts demonstrating how Arendts violated JPZ's rights, and that there is no actionable tort underlying the conspiracy. ECF No. 71, PageID.1981-82.

Arendts adds nothing new that can convince the Court that it made an error of fact or law that ought to change its ruling that Plaintiff's conspiracy claim is adequate. The Second Amended Complaint alleges that Arendts conspired with Labish to deny JPZ's constitutional rights against state created danger, and incorporates the facts alleging how she denied those rights. That deprivation is the "actionable tort underlying the conspiracy." As the Court has held, Plaintiff adequately pled the deprivation of constitutional rights, and that makes Plaintiff's conspiracy charges adequate too. *See* ECF No. 60, PageID.1709-10.

24

### iv. Reconsideration is Inappropriate on Whether Plaintiff's *Monell* Claim Against RCSD Should be Dismissed

Arendts and RCSD argue that there can be no *Monell* liability against RCSD, because there is no underlying constitutional violation. ECF No. 71, PageID.1982. But for the reasons stated, the Court will not grant reconsideration on whether Plaintiff has sufficiently pled a constitutional violation. There still could be *Monell* liability against RCSD.

### v. Reconsideration is Appropriate on State Tort Immunity Related to Count V

Arendts and RCSD argue that they are both immune from state tort liability. *Id.* at PageID.1983. Plaintiff agrees that RCSD is immune from state tort liability under Michigan law, ECF No. 77, PageID.2125, so RCSD's Motion to Dismiss Plaintiff's state law claim (Count V) against RCSD is **GRANTED**.

State tort liability has several elements, two of which are at issue here: whether the state employee's conduct was grossly negligent, and whether it was the proximate cause of the injury. *See Tarlea v. Crabtree*, 263 Mich. App. 80, 83 (2004).

Arendts argues that she was not grossly negligent. ECF No. 71, PageID.1986-87. However, the same facts which led to this court's findings about Arendts' qualified immunity from federal suit lead to a

25

finding that dismissal is inappropriate because of a lack of gross negligence. There are questions of fact that preclude dismissal.

However, upon reexamination of the law, the Court determines that it made an error of law that would change the outcome of whether Michigan tort immunity shields Arendts from Count V. Therefore, Arendts' Motion to Dismiss that claim against her will also be **GRANTED**.

Arendts argues, as she did in attempting to prevent Plaintiff from filing his Second Amended Complaint, that Michigan law provides that governmental employees are immune from tort liability unless (among other things) the employee's conduct is the proximate cause of the injury. ECF No. 71, PageID.1983-86; ECF No. 52, PageID.1660-61. Arendts correctly states the law. *See Tarlea*, 263 Mich. App. at 82. And under Michigan law, there can only be *one* "proximate cause" for the purpose of state tort immunity: this means: "*the one* most immediate, efficient, and direct cause preceding an injury, not *a* proximate cause." *See Robinson v. City of Detroit*, 462 Mich. 439, 445-46 (2000) (*internal quotations removed, emphasis added*).

Moreover, Michigan courts have held that state officers are entitled to tort immunity where they are allegedly responsible for a plaintiff's suicide: when someone commits suicide, "the one most immediate, efficient, and direct cause of [their] death [is their] own conduct." *Cooper v. Washtenaw Cnty.*, 270 Mich. App. 506, 509 (2006).

26

In its Order Granting Plaintiff Leave to File a Second Amended Complaint, the Court stated that this issue needed additional discovery to resolve. ECF No. 60, PageID.1713. That conclusion was incorrect as a matter of law. There is no dispute that, sadly, JPZ died by suicide. Even assuming the facts in the light most favorable to Plaintiff, suicide requires that victim take his own life. That action is the most immediate, efficient, and direct cause preceding his injury. *See Robinson v. City of Detroit*, 462 Mich. at 446; *Cooper*, 270 Mich. App. at 509. Even if, as alleged, the Defendants' conduct led to JPZ's suicide, Michigan law states that there can only be one proximate cause for tort immunity purposes. As a matter of law, a suicide's most efficient cause is the action taken by its victim. *See id.* Discovery could not reveal any information that would contradict this fact.

Therefore, Count V is **DISMISSED** against Arendts. However, Count IV, which alleges intentional infliction of emotional distress, will not be dismissed. Plaintiff may potentially recover for emotional distress caused by Arendts that JPZ suffered before his death, but not for JPZ's death itself.

### vii.   Conclusion

For the reasons stated, Arendts and RCSD's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Count V is dismissed against Defendant RCSD and Defendant Arendts.

27

**C.    Deputy Scott Labish's Motion to Dismiss**

Deputy Scott Labish also moves to dismiss Plaintiff's Complaint. ECF No. 74. As in the case of Arendts' and RCSD's Motion to Dismiss, the Court construes Labish's Motion as a Motion for Reconsideration: it seeks a reversal of the Court's previous finding that Plaintiff's Second Amended Complaint could survive a motion to dismiss.

Labish's Motion to Dismiss largely tracks Arendts' and RCSD's Motion. Therefore, for the same reasons given above, Labish's Motion will be **GRANTED** in part and **DENIED** in part. As it was against RCSD and Arendts, the state tort liability claim in Count V will be dismissed against Defendant Labish, and the rest of the Complaint remains operative against him.

Labish makes four arguments which were not present in Arendts' and RCSD's Motion to Dismiss.

First, Labish argues that "[i]t is well established . . . that allegations of verbal harassment and threats are insufficient to state a civil rights claim under § 1983." *Mizori v. Miller*, No. 5:09-CV-10824, 2009 WL 777640, at *2 (E.D. Mich. Mar. 20, 2009) (O'Meara, J.) (*citing Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987)); ECF No. 74, PageID.2070-71. But the cases that Labish cites for that point all deal with situations where correctional officers are alleged to have verbally abused prisoners. They do not address whether verbal abuse may be part of a state-created danger claim. Here, Plaintiff cites *Lipman v. Budish*, 974 F.3d 726, 741-

28

42 (6th Cir. 2020) for the principle that verbal conduct by state officers can be part of a state-created danger claim it that conduct occurs in a context where the state arguably creates a danger. In *Lipman*, officers repeatedly interviewed an abuse victim in the presence of her abuser. *Id.* Here, Labish is alleged to have secluded JPZ while he engaged in verbal harassment and threats. The context in this case includes the intentional seclusion of JPZ, not only subjecting him to verbal harassment and threats. Because Plaintiff's claim is for more than merely verbal abuse, the *Ivey* line of cases cited by Labish does not require dismissal.

Second, Labish argues that he cannot be liable for a failure to properly write reports about his interactions with JPZ. ECF No. 74, PageID.2071-72. But this argument misses the mark. Plaintiff is not basing his claim on this alleged failure as his theory of liability, but rather the alleged seclusion and harassment of JPZ. ECF No. 83, PageID.2175-76. The Court agrees.

Third, Labish argues that Plaintiff's claim of intentional infliction of emotional distress should be dismissed for two reasons: Plaintiff has not shown "willful and wanton misconduct," as is required by common law tort immunity that state officials have against intentional torts, and Plaintiff has not shown outrageous conduct sufficient to state a claim for that tort. ECF No. 74, PageID.2076-79. The Court disagrees. As stated both above and in the Court's previous Order, the Amended Complaint set forth sufficient facts to survive a Motion to Dismiss that Labish's

alleged conduct of secluding and berating JPZ was willful and wanton, and was outrageous. Whether these claims can be borne out sufficiently to avoid a motion for summary judgment is a question that that only discovery will help resolve.

Fourth, Labish argues that Plaintiff has not sufficiently pled a charge of "gross negligence." ECF No. 74, PageID.2079-81. The Complaint's claim of wrongful death, Count V, alleges that "Defendants' conduct was grossly negligent . . . ." ECF No. 61, PageID.1733. First, the Court has already dismissed Plaintiff's claim of wrongful death against Labish. Second, Plaintiff concedes that they do not make a separate claim of gross negligence. ECF No. 83, PageID.2184 n. 3. Therefore, this argument adds nothing material to the Court's decision.

Therefore, Labish's Motion will be **GRANTED IN PART** and **DENIED IN PART**: only Count V is dismissed against Defendant Labish.

### D.    Additional Motions

While Defendants' Motions to Dismiss have been pending, the parties have filed several additional motions.

On September 26, 2024, Arendts and RCSD filed a Motion to Exceed Page Limit for their Motion to Dismiss. ECF No. 68. This Motion is **DENIED** as moot.

On October 18, 2024, Arendts and RCSD filed a Motion to Stay discovery in this case pending the resolution of their Motion to Dismiss.

ECF No. 76. On October 28, 2024, Labish also filed a Motion to Stay discovery pending the resolution of his Motion to Dismiss. ECF No. 79. On March 25, 2025, Labish and the MCSD also filed another Motion to Stay and Motion for Protective Order. ECF No. 92. Arendts and the RCSD also filed a Motion for Protective Order on April 4, 2025. ECF No. 93.

Insofar as these Motions seek protective orders or to stay discovery based on the fact that Defendants' Motions to Dismiss based on qualified immunity are pending, those Motions to Stay and for Protective Orders are **DENIED** as moot.

The two motions for protective orders state additional grounds for why the Court should issue such orders.

Labish argues that because Plaintiff has allegedly been "engaged in a concerted effort to destroy Deputy Labish's reputation through social media and verbal disparagement throughout the community," the Court should preclude discovery into Labish's personnel file and disciplinary records. ECF No. 92, PageID.2245.

The scope of discovery is within the Court's discretion. And the Court agrees with Plaintiff's Response that Labish's personnel files are relevant to Plaintiff's *Monell* claim against the MCSD. Those files could reveal whether the MCSD had a policy of permitting Labish to unlawfully seclude students. Plaintiff may obtain discovery regarding this matter: it is relevant to their claims. Fed. R. Civ. P. 26(b)(1). The Motion for

31

Protective Order is therefore **DENIED**. However, Labish, the MCSD, and Plaintiff are **ORDERED** to submit a proposed protective order which would redact personal and irrelevant information about Labish or other individuals, if such information is in the discovered evidence.

Similarly, Arendts and the RCSD argue that they are entitled to a protective order precluding discovery into educational records protected from discovery by the Family Education Rights and Privacy Act ("FERPA"). ECF No. 93, PageID.2309-10. However, as Plaintiff points out, while FERPA generally forbids schools from disclosing educational records, "it does not, by its express terms, prevent *discovery* of relevant school records under the Federal Rules of Civil Procedure." *Briggs v. Bd. of Trs. Columbus State Cmty. Coll.*, No. CIV. A. 2:08-CV-644, 2009 WL 2047899, at *4 (S.D. Ohio July 8, 2009) (*citing Ellis v. Cleveland Mun. Sch. Dist.*, 309 F. Supp. 2d 1019, 1023 (N.D. Ohio 2004)). Arendts and the RCSD have not provided authority to contradict this argument. Their Motion for Protective Order is **DENIED**. However, RCSD and Plaintiff are **ORDERED** to submit a proposed stipulated protective order addressing how they will comply with FERPA's notification requirements. *See Briggs*, 2009 WL 2047899 at *4.

### III. CONCLUSION

For the reasons stated, the Court **ORDERS** the following:

The Macomb County Sheriff's Office's Motion to Dismiss, ECF No. 64; Melissa Arendts and Romeo Community Schools' Motion to Dismiss,

32

ECF No. 71, and Scott Labish's Motion to Dismiss, ECF No. 74, are **GRANTED** in part and **DENIED** in part.

Count V will be **DISMISSED** against all Defendants. However, the rest of the Second Amended Complaint remains in effect.

Labish, the MCSD, and Plaintiff are **ORDERED** to submit a proposed protective order addressing the redacting of personal and irrelevant information discovered about Labish or others. However, the various Motions to Stay and Motions for Protective Orders, ECF Nos. 68; 76; 79; 92; 93, are **DENIED**.

RCSD and Plaintiff are **ORDERED** to submit a proposed stipulated protective order for how they will comply with FERPA's notification requirements.

The Parties are also **ORDERED** to attend a telephonic status conference with the Court scheduled for September 24, 2025 at 3:30 p.m. Pursuant to the Stipulated Order Vacating the Scheduling Order issued June 30, 2025, ECF No. 98, PageID.2380, the parties must submit a new proposed scheduling order within fourteen days of the issuance of this Order.

**SO ORDERED.**

Dated: August 4, 2025             /s/Terrence G. Berg
                                  HON. TERRENCE G. BERG
                                  UNITED STATES DISTRICT JUDGE

33